UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-403-GWU

MICKEY LYNN MCGUIRE, JR., PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Mickey McGuire brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that McGuire, a 34-year-old former construction worker and roofer with a "limited" education, suffered from impairments related to being status post gunshot wounds to the right lower extremity, being status post a motor vehicle accident resulting in right knee dislocation with posterolateral corner repair of the right knee which showed medial collateral (MCL), anterior cruciate (ACL), and posterior cruciate (PCL) ligament tears. (Tr. 12, 16). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14, 16). Since the available work was found to constitute a significant number of jobs in the national economy, he could not be considered totally disabled. (Tr. 17). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.). After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Linda Taylor included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as (1) an inability to more than occasionally push, pull or use foot controls with the right lower extremity; (2) an inability to more than occasionally climb stairs, ramps or ladders, balance, stoop, kneel, or crouch; (3) an inability to ever crawl; and (4) a need to avoid all exposure to hazards such as unprotected heights and dangerous machinery.  (Tr. 49).  In response, Taylor identified a significant number of other jobs which could still be performed.  (Tr. 50).  Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized McGuire's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

After review of the evidence presented, the undersigned finds no reversible error.  Dr. Mark Burns of Corporate Health and Wellness examined McGuire in March of 2008.  Dr. Burns noted a history of leg injuries as a result of motor vehicle accidents and gunshot wounds.  (Tr. 322).  Despite these problems, the physician opined that the plaintiff retained the ability to perform such activities as sitting, standing, lifting, carrying, handling objects, hearing, seeing and speaking.  (Id.).  The hypothetical question was compatible with this opinion.  The examiner also indicated that he was temporarily impaired in moving about and traveling but that these problems should resolve within a year.  (Id.).  These restrictions would not

meet the one-year durational requirement. 20 C.F.R. §§ 404.1509 and 416.909. Therefore, the opinion of Dr. Burns supports the administrative decision.

McGuire was treated at the University of Tennessee Memorial (UT) Hospital in November of 2005 following an automobile accident. An x-ray of the left knee revealed no acute findings. (Tr. 354). An x-ray of the lumbar spine was normal. (Tr. 355). The claimant was diagnosed as suffering from a lumbar sprain and contusion. (Tr. 2). More severe physical restrictions than those found by the ALJ were not identified. (Tr. 265-270, 347-358). Thus, this report does not support the plaintiff's disability claim.

In March of 2006, McGuire was involved in another motor vehicle accident. (Tr. 360). He was again treated at the UT Hospital. An x-ray of the right knee revealed abnormal widening of the lateral joints with varus angulation of the tibia suggestive of lateral collateral ligamentous injury with no fractures being identified. (Tr. 362). A chest x-ray revealed no sign of cardiopulmonary disease. (Tr. 363). An x-ray of the cervical spine showed no abnormality. (Tr. 364). A dislocated right knee was noted. (Tr. 388). An MRI scan later revealed findings consistent with MCL, ACL, and PCL tears. (Id.). The patient underwent repair of the posterolateral corner of his right knee. (Tr. 389). More severe physical restrictions than those found by the ALJ were not reported by the staff. (Tr. 243-264, 359-410). Thus, these records also do not support the plaintiff's disability claim.

In June of 2006, McGuire was once more involved in a motor vehicle accident. (Tr. 242). The plaintiff was diagnosed as suffering from back and knee sprain. (Id.). A CT scan of the head revealed no acute intracranial findings. (Tr. 240). Again, more severe functional restrictions than those found by the ALJ were not imposed. (Tr. 234-242, 411-422). Therefore, this report also does not support the plaintiff's disability claim.

In April of 2007, McGuire was shot nine times by a police officer who believed that the plaintiff had tried to run him over. (Tr. 26). The claimant was driving on a suspended driver's license and indicated he was returning his car to his wife. (Id.). McGuire was convicted of aggravated assault on a police officer, a felony, and sentenced to four years in prison, of which he served six months before receiving probation. (Tr. 26-27).

McGuire was treated for his gunshot injuries at the UT Hospital. A x-ray of the left femur revealed no fracture or malalignment with numerous foreign bodies projecting over the soft tissues about the femur and knee. (Tr. 434). An x-ray of the left forearm revealed a mildly displaced comminuted fracture of the distal ulnar diaphysis and numerous foreign bodies over the soft tissues of the left ulnar. (Tr. 435). An x-ray of the left knee was negative for fracture but revealed foreign bodies over the soft tissues. (Tr. 436). An x-ray of the pelvis showed no fracture or malalignment. (Tr. 437). The sacroiliac and hip joints were maintained. (Id.). An

x-ray of the left tibia and fibula was negative for fracture and malalignment but did show foreign bodies in the soft tissues about the knee. (Tr. 438). More severe physical restrictions than those found by the ALJ were not imposed. (Tr. 204-223, 423-454). Therefore, this report also does not support the plaintiff's disability claim.

In May of 2009, Dr. Roy Varghese, of the Ann Wasson Clinic, completed an Ability to do Work-Related Activities Form. Dr. Varghese opined that McGuire would be capable of lifting a maximum of 25 pounds frequently and 20 pounds occasionally, standing or walking for up to six hours in an eight-hour day, sitting for up to six hours in an eight-hour day, with a need for a sit/stand at will option, an inability to more than occasionally twist, stoop, crouch or climb stairs, an inability to ever climb ladders, and a need to avoid concentrated exposure to temperature extremes, wetness, humidity, noise, fumes, odors, dust, and poor ventilation. (Tr. 456-458). The ALJ adopted parts of the doctor's restrictions in his residual functional capacity assessment (Tr. 16), but did omit the sit/stand option and several of the environmental restrictions.

The court finds any error by the ALJ in failing to fully adopt Dr. Varghese's findings to be harmless for several reasons. Significantly, McGuire has not argued that the omission of the aforementioned factors constituted reversible error. While the ALJ identified Dr. Varghese as a treating physician (Id.), the court notes that the treatment notes from the Ann Wasson Clinic make no mention of the doctor ever

treating the plaintiff and the claimant appears to have been seen there on only two occasions (Tr. 309-318). Thus, the undersigned finds that Dr. Varghese's status as a treating source is very questionable and, so, his opinion was not entitled to superior weight. Dr. Varghese related his restrictions in part to the claimant's gunshot injuries. (Tr. 457). As previously noted, these injuries were incurred by the plaintiff during the commission of a felony. (Tr. 26). The defendant points out that impairments incurred as a result of the commission of a felony cannot form the basis of a disability claim. 20 C.F.R. § 404.1506(a). Therefore, the opinion of Dr. Varghese does not support the plaintiff's claim.

Dr. Robert Brown reviewed the record in April of 2008 and indicated that McGuire would be able to perform a restricted range of light level work. (Tr. 333-340). Dr. Brown noted that the plaintiff would never be able to climb ladders, ropes and scaffolds, a more severe limitation than that found by the ALJ. (Tr. 335). The plaintiff has not raised this as an issue and the opinion was contrary to that of Dr. Burns, an examining source. Therefore, the court finds no error.

McGuire argues that the ALJ erred by failing to provide specific rationale for rejecting the credibility of his pain complaints. However, the ALJ noted a number of reasons for this finding. Significant for the ALJ was the plaintiff's failure to be truthful with his treating sources regarding his use of narcotics. (Tr. 15). In October of 2007 the claimant told the staff at the Ann Wasson Clinic that he was not taking

any pain medication but drug testing was positive for opiates. (Tr. 316). The ALJ noted that while McGuire indicated he saw Dr. Varghese on a monthly basis, the medical record revealed only two visits to the Ann Wasson Clinic. (Tr. 15, 309-318). These had been the only visits by the claimant to a medical practitioner since the April, 2007 shooting incident and the ALJ considered his failure to pursue medical treatment to be a factor indicating that the pain was not as severe as alleged. (Tr. 15). Finally, the ALJ indicated that the examining medical sources such as Dr. Burns and Dr. Varghese had not identified totally disabling restrictions. (Tr. 15-16). Therefore, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 8th day of September, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**